**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

FANG LIU,

                                Plaintiff,

              -against-



THE CAIPA FOUNDATION, INC., CAIPA
SOCIAL DAYCARE CENTER LLC.,
PEGGY SHENG, WAYNE SHENG, JOHN
HUNG, GENBAO HU, JOHN DOES #1-10,
JANE DOES #1-10, fictitiously named
parties, true name(s) unknown, and
COMPANY ABC #1-10, fictitiously named
entities, true name(s) unknown.

                                Defendants,

Civil Action No.: 1:16-cv-06674


**FIRST AMENDED COMPLAINT**

**JURY TRIAL DEMAND**


     Plaintiff FANG LIU ("Plaintiffs"), by and through her undersigned attorneys, allege on

knowledge as to her own acts and otherwise on information and belief as follows:

                        <u>**NATURE OF THE ACTION**</u>

     1.   This proceeding is brought to remedy discrimination on the basis of sex in the terms of

condition of employment and retaliation for opposition to unlawful employment practice, in

violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

("Title VII"); the New York State Human Rights Law, New York Executive Law § 296 et seq.

(the "Executive Law"); and the Administrative Code of the City of New York §8-107 et seq. (the

"Administrative Code"). Plaintiff seeks injunctive and declaratory relief, lost wages, additional

amounts as liquidated damages, compensatory and punitive damages, reasonable attorneys' fees and costs, and other appropriate legal and equitable relief pursuant to Title VII, the Executive Law, the Administrative Code.

2.   This proceeding is also brought charging the Defendants violated the plaintiff's rights under the Family Medical Leave Act, 29 U.S.C. § 2601, et seq. ("FMLA"). The plaintiff seeks to recover lost wages, additional amounts as liquidated damages, compensatory and punitive damages, reasonable attorney's fees and costs, and other appropriate legal and equitable relief pursuant to the FMLA, as a result of being discriminated against on the basis of an actual and/or perceived disability and the medical commitments that accompanies these disabilities.

3.   The plaintiff also seeks recovery of actual damages, compensatory and punitive damages, reasonable attorney's fees and costs and other appropriate legal and equitable relief under its New York state law claims of Intentional Infliction of Emotional Distress and Defamation/Slander.

## JURISDICTION AND VENUE

4.   Jurisdiction of this Court is proper under Title VII, 42 U.S.C. § 2000e-5(f)(3), and 28 U.S.C. § 1331. The Court additionally has supplemental jurisdiction over the Executive Law, Administrative Code claims, state law claims of Intentionall Infliction of Emotional Distress and claims of Defamation/Slander pursuant to 28 U.S.C. § 1367.

5.   As the Southern District of New York is the district where most defendants reside, and all defendants are residents of the State in which this district is located, venue is proper with this District pursuant to 28 U.S.C. § 1391(a)(1).

6.   Prior to filing this Complaint, plaintiff has filed a charge of sex discrimination, sexual harassment and retaliation alleged herein on the City of New York Commission on Human

Rights, pursuant to § 8-502(c). On or about July 20, 2016, the Commission issued a Notice of Dismissal for Administrative Convenience. Plaintiff will serve a copy of this Complaint on the City of New York Commission on Human Rights and the Corporation Counsel of the City of New York.

7.   Prior to filing this Complaint, plaintiff has filed a cross-charge of sex discrimination, sexual harassment and retaliation alleged herein with the United States Equal Opportunity Employment Commission (the "EEOC"). On or about June 27, 2016, the EEOC has issued a Right to Sue Notice.

## THE PARTIES

1.       Plaintiff Fang Liu ("Liu") is a citizen of New York. She was jointly employed by defendant CAIPA Daycare Center and CAIPA Foundation at its daycare center as a Health Aid beginning on or about September 6, 2013. Plaintiff was terminated by the CAIPA defendants on or about April 30, 2015.

2.        Defendant the CAIPA Foundation, INC., ("CAIPA Foundation") is a non-for-profit corporation organized under the law of the State of New York. Its principal place of business address is 185 Canal St. 5th Floor, New York, NY, 10013.

3.        Defendant CAIPA Social Daycare Center LLC ("CAIPA Daycare Center") is a limited liability company organized under the law of the State of New York. The address of its principal place of business is 41 Elizabeth Street, 600, New York, NY, 10013. It also operates a daycare center at 1933 86th Street in Brooklyn, NY 11214.

4.       Upon information and belief, the defendant CAIPA Daycare Center has been a subsidiary of CAIPA Foundation at all relevant time period and the defendant CAIPA Foundation directed and controlled the defendant CAIPA Daycare Center's operation,

3

management, employment policies and procedures at all relevant time period. (CAIPA Daycare

Center and CAIPA Foundation, hereby collectively referred as "CAIPA Defendants").

5.      Upon information and belief, Defendant Peggy Sheng ("Peggy") was employed

by the CAIPA defendants as a Director at all relevant time period. Her business address is c/o

CAIPA Social Daycare Center LLC, 41 Elizabeth Street, 600, New York, NY, 10013.

6.      Upon information and belief, Defendant Wayne Sheng ("Wayne") was employed

by the CAIPA defendants as a Director at all relevant time period. His business address is c/o

CAIPA Social Daycare Center LLC, 41 Elizabeth Street, 600, New York, NY, 10013. Defendant

Wayne is defendant Peggy's brother.

7.      Upon information and belief, Defendant John Hung ("Hung") was employed by

the CAIPA defendants at all relevant time period as a Director. His business address is c/o

CAIPA Social Daycare Center LLC, 41 Elizabeth Street, 600, New York, NY, 10013.

8.      Upon information and belief, Defendant Genbao Hu ("Hu") was employed by the

CAIPA as a Cleaner/Janitor at all relevant time period. His last known business address was c/o

CAIPA Social Daycare Center LLC, 1933 86th Street in Brooklyn, NY 11214.

9.      Upon information and belief, at all relevant times herein, Defendants, John Does

#1-10 and Jane Does #1-10 were the owners, officers, directors, members, and/or agents of the

defendants, but whose identities are unknown at this time. The Complaint herein will be

amended, if appropriate, to include the name or names of said individuals when such information

becomes available.

10.      Upon information and belief, at all relevant times herein, Defendants, Company

ABC #1-10 represent other entities affiliated and/or controlled by the defendants. The Complaint

herein will be amended, if appropriate, to include the name or names of said entities when such information becomes available.

## FACTUAL ALLEGATIONS

11.     Plaintiff is a woman. She worked as a health aid at the CAIPA defendants' Manhattan location for approximately 6 months before she was transferred to work at the CAIPA defendants' Brooklyn daycare center.

12.     The defendant CAIPA daycare center provides various community services and programs for the benefit of its clients, most of whom were elderly Medicare beneficiaries. Plaintiff's main job duties included interacting with and assisting the clients and patients in those programs.  During her employment, plaintiff was assigned to lead and administer various programs and courses for the seniors, including but limited to, drawing class, hand-crafting class, handwriting class, musical instrument playing class.

13.     Defendant Hu was hired due to his personal relationship with some management members of the CAIPA defendants. Defendant Peggy regularly referred to and encouraged employees to refer to Hu as "Bao Shu" which in essence means "Uncle Bao," a term of respect and authority.

14.     From October 2014, defendant Hu started to make sexually explicit comments to Plaintiff with the undertone of demanding unwanted sex from the plaintiff. At one time, defendant Hua approached the plaintiff, asking "how long you and your husband has been separated?" Plaintiff answered, "it has been about seven, eight years." Hu continue, "for so long you have not had that thing (sex), do you want it?" Plaintiff was forced to respond, "I am not in that young age to think those things too much." Then Hu drew very close to plaintiff's body,

whispering in her ear, "are you wet down there yet?" Plaintiff became frightened and ran out of the room red-faced.

15.     For months, Hu repeatedly approached the plaintiff with similar lewd comments. Being regularly humiliated and appalled by Hu's sexually explicit comments and lewd words, the plaintiff began to feel nervous and scared at Hu's presence before her. Hu nevertheless continued to repeatedly make those lewd comments about the plaintiff's personal life and her looks, saying words like, "Everything would be ok if I could just be married to Liu Fang," and "Liu Fag is so pretty."

16.     When Hu harassed the plaintiff, he would regularly boast that he "was sent by the boss" and/or had "good relations with the boss." Defendant Peggy also suggested to the plaintiff that Hu acted with her authority and/or permission and the plaintiff would be fired if she showed objection and disrespect for Hu.

17.     On or about November 24, 2014, Defendant Wayne told the plaintiff that he had heard that she was creating "pressure on other people" and that her "work expression or manner had changed for the worse." Plaintiff then told Defendant Wayne that Hu had been sexually harassing her, and because she had refused his unwanted sexual advances and comments, Hu had gone to directors and other staff to spread bad words about her. Wayne took no action with respect to the plaintiff's complaint.

18.     On or about November 25, 2014, Defendant Wayne and another Director Sue Lee called a meeting to discuss employee relations. During the meeting, the plaintiff mentioned defendant Hu's sexually explicit comments and harassing conducts to her. Hu then became very upset, pointed fingers, yelled lewd commented in a threatening tone and body language at the plaintiff. Plaintiff became frightened and cried at the meeting.

19.     After the meeting, the CAIPA defendants asked both the plaintiff and Hu to sign an acknowledgement of the CAIPA's Personal Code of Conduct. No further investigation and action were taken by the CAIPA defendants with respect to the plaintiff's complaint about Hu's sexually harassing conducts.

20.     On or about December 14, 2014, plaintiff once again reported Hu's harassment conducts to defendant Wayne by email. Plaintiff also repeatedly reported Hu's harassment conducts to defendant Peggy and defendant Hung. No action or investigation were taken.

21.     In response to plaintiff's complaints of sexual harassment, Defendant Wayne told the plaintiff that there was nothing he could do and she had to bear or endure it. In response to Plaintiff's sexual harassment complaint, Defendant Hung responded by further insulting the plaintiff. He humiliated plaintiff by saying, "Really, why he did not sexually harass other people?" which implied that plaintiff did not behave herself properly as a woman and caused/drew Hu's attention to harass her.

22.     After the plaintiff complained about Defendant Hu's sexual harassment conducts, because the defendant directors showed indifference to plaintiff's complaints and even participated in ridiculing and humiliating plaintiff, some other workers began to join in and subject plaintiff to more extensive harassment and humiliation. One time, two male coworkers made fun of the plaintiff, saying, "we heard that in your hometown of Northern provinces, it is customary that the husband will have the wife to sleep with their male guest." Plaintiff felt humiliated and upset, defending herself and saying, "in our North, we are simple people, and we don't do that kind of shameless things." The two workers continued to describe in detail what they believed people in the plaintiff's hometown would force their wife to sleep with other men,

which they described made those Northern men being respected by their wife. They then laughed loudly while seeing that the plaintiff looked being ashamed and intimated.

23.     After complaining about Hu's harassment conducts, plaintiff started to encounter increasing hostility at workplace. She was constantly mocked and ridiculed by others workers. She was asked the insulting questions like "why you are so fat," and received comments like "Northern women have big bust and butt," from other workers. Plaintiff had to tell them that she had arthritis, and her Hormone treatments caused her weight gain. Those mocks and offensive comments nevertheless continued.

24.     Because defendant directors refused to investigate and stop Hu and other worker's harassing conducts targeting at plaintiff after she complained, Hu and those workers felt encouraged by the management's silence. They started to throw their embarrassing and humiliating comments and insulting questions more frequently at plaintiff on daily basis.

25.     For those workers who were friends to plaintiff, they were threatened by Hu not to interact with the plaintiff. Being afraid of reprisal from the defendant directors, those workers started to isolate the plaintiff and stop to speak to her. One of the plaintiff's co-workers told the plaintiff, "Don't talk to me, we should not talk at work, … because Bao Shu (defendant Hu) has been badmouthing you behind your back."

26.     For months, Defendant directors was not just unresponsive to the plaintiff's complaints, they in fact participated in harassing the plaintiff. After the plaintiff complained about the harassment and hostility from Hu and other workers, the CAIPA defendants changed plaintiff's work schedule and added work that the plaintiff had not been assigned to before. The plaintiff was no longer allowed to teach the drawing course to her clients, which she had been assigned to do for long time.

27.     On or about March 19, 2015, Defendant Peggy required the plaintiff to do cleaning work and removed a large volume of carton-board boxes that had piled up for 15 days. Defendant Hung did not allow the plaintiff to use the side door which lead to outside directly. Consequently, the plaintiff had to take a longer distance to carry those heavy boxes outside. The heavy lifting and moving for the whole day triggered the plaintiff's left arm and joint illness, and the pain made the plaintiff unable to sleep at night. She had to take painkillers to treat the symptoms and ask for sick leave on the second day.

28.     In or about April 2015, when Hu and other workers once again started to called plaintiff various derogatory names, such as "laocaipi" a derogatory term in Mandarin that means "old vegetable skin" an old worthless thing. With no help or intervention from defendant directors, plaintiff had to take out her phone and began to record those offensive conversations in order to keep evidence for having been harassed and humiliated.

29.     On or about April 20, 2015, defendant Hung approached Plaintiff, asking whether she had recorded some conversations of her co-workers. Hung forced the plaintiff to produce her phone and put in her password of the phone. Hung then ran a search of the content of the plaintiff's private cell phone. Defendant Hung told Plaintiff that while he knew that other workers were bullying and harassing her, but he or other Directors would not help her. Defendant Hung told the plaintiff that he would report the recording to Defendant Peggy, threatening that plaintiff would be sent to prison for illegal recording.

30.     The continuous and increasing hostility in workplace began to take a toll on Plaintiff's health. On or about April 28, 2015, the plaintiff informed Defendant Hung that she need to take sick leave to see a doctor. On April 29, the plaintiff's doctor instructed her to stay

home from work for three days to recover from her pain and stress. Plaintiff provided her

doctor's note to the CAIPA defendants for three-day sick leave.

31.     On or about April 30, 2015, while Plaintiff was still out on sick leave, she

received a text message from Tammy, a receptionist who worked for the defendants. Tammy

instructed her to go and speak with Yin who worked in defendants' Human Resources Office.

Plaintiff informed Tammy that she was still out on leave for medical reasons, and was on

prescription medications. Shortly thereafter, Tammy left the plaintiff a voicemail message

directing her to go to defendants' office to pick up a letter.

32.     By said letter dated April 30, 2015, Defendant Peggy on behalf of the CAIPA

defendants terminated the plaintiff's employment for allegedly making "unauthorized recordings

on the premises and creating a hostile work environment among the staff."

33.     On the same date, the defendants also terminated Sue Lee, a program director, the

plaintiff's supervisor who had refused to participate in intimidating and harassing the plaintiff.

34.     During her employment with the CAIPA defendants, plaintiff excelled at her job.

The programs that she administrated and led were well-received by the seniors and she was well-

liked by her senior clients. After her sudden termination, the senior clients began to repeatedly

ask the defendants for explanation as to why the plaintiff no longer worked for the center.

35.     On or about May 10, 2016, after approximately ten days of the plaintiff's

termination, with numerous inquiries from the seniors asking about the plaintiff's absence, the

defendant Peggy showed up at a lunch with the seniors. Through a high volume microphone,

Peggy announced to the seniors and the workers, proclaiming that the plaintiff was terminated

because she did something shameful and illegal, which she was too embarrassed to tell them

what it was. Those remarks with the undertone defaming the plaintiff as a woman lacking of moral character in Chinese culture shocked and stunned the attendants.

36.     Upon hearing those remarks from the management, the seniors felt puzzled and began to question what kind of shameful things that the plaintiff had done causing her termination. When Mr. Zhang, a senior client in the center, asked the plaintiff directly about those remarks from the defendant Peggy, the plaintiff was alert and became very worried about her reputation.

37.     On or about May 13, 2016, the plaintiff sent an "open letter" to the defendants and the seniors in attempt to clarify and state what actually happened causing her termination. In receipt of the letter, many seniors signed their names on the letter showing their support for the plaintiff.

38.     Subsequently, the defendant Peggy once again summon the plaintiff's co-workers during a lunch with the seniors to defame the plaintiff. After Peggy announced that the plaintiff was an immoral and shameless woman, the defendants required all workers in the presence to go on the podium, accusing the plaintiff of bad acts and describing the plaintiff's immorality to her senior clients. The defendants videotaped the whole condemnation session.

39.     For months, some seniors continued to express their antipathy toward this form of smearing the plaintiff's reputation, the defendants threaten those seniors with cancellation of their membership.

40.     Because the seniors continued to protest the plaintiff's termination, the defendants sent a community representative, Don B. Lee, who also is the chief information officer of the CAIPA, to talk to each of those disagreeable members. For months, the defendants through its

representative continued to spread defamatory reason for the plaintiff's discharge and defame the plaintiff in front of her clients.

41.     Upon information and belief, for over a year since the plaintiff's termination, the defendants and their representatives continued to discuss the plaintiff's "bad and shameful" acts with her clients and his former co-workers. The plaintiff's former clients, who used to being very friendly to her, have been avoiding her and refusing to speak to her.

42.     Upon information and belief, for over a year since the plaintiff's termination, during the defendants' weekly Wednesday meetings, the defendants repeatedly described the plaintiff as an immoral woman to its staff and clients and stated that the plaintiff's immoral conducts brought shame and disgrace to the defendant organizations.

<u>**COUNT I**</u>
<u>**Sex Discrimination/Sexual Hostile Work Environment**</u>
<u>**Under Title VII**</u>

43.     Plaintiff realleges and incorporates by reference all allegations in paragraphs in the above as if fully set forth herein.

44.     By the acts and practices described above, including but not limited to creating a hostile work environment for plaintiff because of her sex and ignoring plaintiff's complaints of discrimination/sexual harassment, defendants discriminated against plaintiff in the terms and conditions of her employment on the basis of her sex in violation of Title VII.

45.     The CAIPA Defendants are liable as plaintiff's "employer" pursuant under Title VII.

46.     The CAIPA Defendants also had knowledge of all the discriminatory/harassment conducts alleged in this complaint, but took no disciplinary action or any affirmative steps to

eradicate the sex discrimination. Thus, they should be held to have condoned the discriminatory acts of its employee, and may therefore be vicariously liable for the resulting harm.

47.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages and damages for mental anguish and humiliation as a result of the defendants' discriminatory acts.

48.     Defendants acted intentionally and with malice and/or reckless indifference to plaintiff's federally protected rights.

## COUNT II
## Sex Discrimination/Sexual Hostile Work Environment
## Under the Executive Law

49.     Plaintiff realleges and incorporates by reference all allegations in paragraphs in the above as if fully set forth herein.

50.     By the acts and practices described above, including but not limited to creating a hostile work environment for plaintiff because of her sex and ignoring plaintiff's complaints of discrimination/sexual harassment, defendants discriminated against plaintiff in the terms and conditions of her employment on the basis of her sex in violation of the Executive Law.

51.     The CAIPA Defendants had knowledge of all the discriminatory and harassment conducts alleged in this complaint, but took no disciplinary action or any affirmative steps to eradicate the sex discrimination. Thus, they should be held to have condoned the discriminatory acts of its employee, and may therefore be vicariously liable for the resulting harm.

52.     The CAIPA Defendants are liable under the Executive Law as aiders and abettors of the discrimination against plaintiff.

53.     The CAIPA Defendants are liable as plaintiff's "employer" pursuant to the Executive Law.

13

54.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages and damages for mental anguish and humiliation as a result of defendant's discriminatory acts.

**COUNT III**
**Sex Discrimination/Sexual Hostile Work Environment**
**Under the Administrative Code**

55.     Plaintiff realleges and incorporates by reference all allegations in paragraphs in the above as if fully set forth herein.

56.     By the acts and practices described above, including but not limited to creating a hostile work environment for plaintiff because of her sex and ignoring plaintiff's complaints of discrimination/sexual harassment, defendants discriminated against plaintiff in the terms and conditions of her employment on the basis of her sex in violation of the Administrative Code.

57.     The CAIPA Defendants had knowledge of all the discriminatory/harassment conducts alleged in this complaint, but took no disciplinary action or any affirmative steps to eradicate the sex discrimination. Thus, they should be held to have condoned the discriminatory acts of its employee, and may therefore be vicariously liable for the resulting harm.

58.     The CAIPA Defendants are liable under the Administrative Code as aiders and abettors of the discrimination against plaintiff.

59.     The CAIPA Defendants are liable as plaintiff's "employer" pursuant to the Administrative Code.

60.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages and damages for mental anguish and humiliation as a result of defendant's discriminatory acts.

61.     Defendants acted intentionally and with malice and/or reckless indifference to plaintiff's statutory rights.

## COUNT IV
## Retaliation under Title VII

62.     Plaintiff realleges and incorporates by reference all allegations in paragraphs in the above as if fully set forth herein.

63.     By the acts and practices described above, including but not limited to forcing plaintiff to stop working and terminating plaintiff's employment, the defendants retaliated against the plaintiff in the terms and conditions of her employment for opposing unlawful employment practice, in violation of Title VII.

64.     The CAIPA Defendants are liable as plaintiff's "employer" pursuant to Title VII.

65.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages and damages for mental anguish and humiliation as a result of defendant's discriminatory acts.

66.     Defendants acted intentionally and with malice and/or reckless indifference to plaintiff's federally protected rights.

## COUNT V
## Retaliation under the Executive Law

67.     Plaintiff realleges and incorporates by reference all allegations in paragraphs in the above as if fully set forth herein.

68.     By the acts and practices described above, including but not limited to forcing plaintiff to stop working and terminating plaintiff's employment, the defendants retaliated against plaintiff in the terms and conditions of her employment for opposing unlawful employment practice, in violation of the Executive Law.

69.     The CAIPA Defendants are liable as plaintiff's "employer" pursuant to the Executive Law.

70.     The CAIPA Defendants are liable under the Administrative Code as aiders and abettors of the discrimination and retaliation against plaintiff.

71.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages and damages for mental anguish and humiliation as a result of defendants' discriminatory acts.

**COUNT VI**
**Retaliation under the Administrative Code**

72.     Plaintiff realleges and incorporates by reference all allegations in paragraphs in the above as if fully set forth herein.

73.     By the acts and practices described above, including but not limited to forcing plaintiff to stop working and terminating plaintiff's employment, the defendants retaliated against plaintiff in the terms and conditions of her employment for opposing unlawful employment practice, in violation of the Administrative Code.

74.     The CAIPA Defendants are liable as plaintiff's "employer" pursuant to the Administrative Code.

75.     The CAIPA Defendants are liable under the Administrative Code as aiders and abettors of the discrimination and retaliation against plaintiff.

76.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages and damages for mental anguish and humiliation as a result of defendant's discriminatory acts.

77.     The Defendants acted intentionally and with malice and/or reckless indifference to plaintiff's statutory rights.

## COUNT VII
## Discrimination and Retaliation
## under the Family Medical Leave Act

78.     Plaintiff realleges and incorporates by reference all allegations in paragraphs in

the above as if fully set forth herein.

79.     Plaintiff is an eligible employee as defined under the FMLA. From September 16,

2013 to April 30, 2015, Plaintiff had worked at CAIPA full time for more than 12 months and

had provided far more than 1,250 hours of service immediately prior to her termination.

80.     The defendant CAIPA Foundation admits on its website claiming that "CAIPA is

the largest IPA in Asian American communities in New York City and … is comprised of over

930 physician members and affiliates."  Upon information and belief, the defendant CAIPA and

its subsidiaries have shared common management and interrelation between their operation and

they exercise centralized control over their employees.

81.     The defendant CAIPA is an employer as defined under the FMLA. It engaged in

commerce and activity affecting commerce who employs 50 or more employees for each

working day during each of 20 or more calendar workweeks from 2014 to 2016.

82.     The defendant CAIPA Daycare Center is an employer as defined under the FMLA.

It engaged in commerce and activity affecting commerce who employs 50 or more employees for

each working day during each of 20 or more calendar workweeks from 2014 to 2016.

83.     The defendant CAIPA and the CAIPA Daycare Center shall be deemed as a

single employer under the FMLA because they operate under centralized management and

exercise centralized control over their employees.

84.     Section 2612 of the FMLA provides an eligible employee with a total of 12 work weeks of leave during any 12-month period because of a serious health condition that makes the employee unable to perform the functions of the position of such employee.

85.     By the acts and practices described above, including but not limited to forcing plaintiff to stop working and terminating plaintiff's employment while the plaintiff had a serious health condition and during her medical leave, the defendants violated the plaintiff's FMLA rights by failing to provide her with appropriate leave thereunder.

86.     Section 2615 of the FMLA makes it unlawful when any employer discharges or in any other manner discriminates or retaliates any employee who exercises or attempts to exercise his/her rights under the FMLA.

87.     The defendants discriminated the plaintiff for her health condition and violated the plaintiff's right to medical leave, in violation of the FMLA.

88.     The defendant retaliated against plaintiff in the terms and conditions of her employment for opposing unlawful employment practice, in violation of the FMLA.

89.     The CAIPA Defendants are liable as plaintiff's "employer" pursuant to the FMLA.

90.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages and damages for mental anguish and humiliation as a result of defendant's discriminatory acts and retaliation.

91.     The Defendants acted intentionally and with malice and/or reckless indifference to plaintiff's federally protected rights.

## COUNT VIII
## Defamation/Slander

92.     Plaintiff realleges and incorporates by reference all allegations in paragraphs in the above as if fully set forth herein.

93.     By the acts and practices described above, including but not limited to, making patently false statement concerning the plaintiff, broadcasting defamatory statements to the plaintiff's clients and former co-workers, exposing the plaintiff to public hatred, shame, contempt, ridicule and disgrace, inducing an evil opinion of the plaintiff in the mind of right-thinking person, and depriving the plaintiff of confidence and friendly intercourse with her clients and co-workers,  the defendants violated the privacy right of the plaintiff. Those defamatory and false statements that the defendants intentionally and maliciously made not only disparaged the plaintiff as a private citizen, but also directly attacked her reputation as a woman and impugned her integrity and morality as a health human-being.

94.     The CAIPA Defendants had knowledge of all the defamatory and false statements that its employees made against the plaintiff at work place, but took no disciplinary action or any affirmative steps to address the falsehood.

95.     The CAIPA defendants indeed approved its employees' conducts and condoned the defamatory statements that its employee made about the plaintiff by facilitating those unlawful conducts with necessary place and time, and therefore be vicariously liable for the resulting harm.

96.     Plaintiff is now suffering and will continue to suffer great humiliation, loss of esteem, mental anguish and suffering, and loss of reputation, and has sustained irreparable injury and monetary damages and damages as a result of defendants' defamatory acts.

## COUNT IX
## Intentional Infliction of Emotional Distress

97.     Plaintiff realleges and incorporates by reference all allegations in paragraphs in the above as if fully set forth herein.

98.     By way of the Defendants' unlawful, intentional, reckless and negligent acts and practices described above, the Defendants intentionally inflicted emotional distress upon the plaintiff.

99.     The defendants, through a pattern of extreme and outrageous conducts, which was beyond all possible bounds of decency, and which may be regarded as atrocious and utterly intolerable with the civilized society, harassed, humiliated, degrade, disparaged, defamed and retaliated against the plaintiff.

100.     In doing so, the individual defendants acted within the course and scope of their employment with the CAIPA defendants, and therefore the CAIPA defendants be vicariously liable for the resulting harm.

101.     Plaintiff is now suffering and will continue to suffer great humiliation, shock, loss of esteem, mental anguish and conscious pain and suffering, and the plaintiff's health was impaired, as a result of the defendants' intentional infliction of emotional distress upon her.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

(a)     Declaring the acts and practices complained of herein are in violation of Title VII, the Executive Law and Administrative Code;

(b)     Enjoining and permanently restraining these violations of Title VII, the Executive Law, the Administrative Code and the FMLA;

(c)     Directing defendants to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect plaintiff's employment opportunities;

(d)      Directing defendants to place plaintiff in the position she would be in but for defendants' discriminatory and retaliatory treatment of her, and to make her whole for all earnings she would have received but for defendants' discriminatory and retaliatory treatment, including, but not limited to, wages, bonuses, pension and other lost benefits;

(e)      Directing defendants to reinstate plaintiff;

(f)      Directing defendants to pay plaintiff liquidated, compensatory and punitive damages as provided by the Law;

(g)      Directing defendants to pay an additional amount to compensate plaintiff for the emotional distress defendants' unlawful conduct has caused plaintiff;

(h)      Awarding plaintiff such interest as is allowed by law;

(i)      Awarding plaintiff her reasonable attorneys' fees and costs; and

(j)      Granting such other and further relief as the Court deems necessary and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the Complaint.


Dated: New York, New York
 December 22, 2016


_____/s/_____
Aihong You, Esq.
LAW OFFICE OF AIHONG YOU
Attorneys for Plaintiff *Fang Liu*
9 Mott Street, Suite 600
New York, NY 10013
Tel: (917) 412-3603
Fax: (732) 909-2214
aihong.you@aihonglaw.com